**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0226n.06
Filed: March 31, 2006

**No. 04-2056**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


HOWARD H. KESSLER; JACQUELINE A. )
KESSLER, )
                                       )
    Plaintiffs-Appellants, )
                                       )
                                       )
                                       )
                                       )
v.                                     )  On Appeal from the United States
                                       )  District Court for the Eastern
VISTEON CORPORATION, a Delaware corporation, )  District of Michigan
                                       )
    Defendant-Appellee. )



**BEFORE:**    **BOGGS, Chief Judge; BATCHELDER; Circuit Judge; and KATZ, District Judge.**[*]

    PER CURIAM. Plaintiffs-Appellants, Howard H. Kessler and his wife, Jacqueline

A. Kessler ("Kessler"), appeal the decision of the district court granting summary judgment to the

defendant, Visteon Corporation ("Visteon"), on their negligence claims. While making a business

visit to a Visteon plant, Kessler was struck by a forklift driven by a Visteon employee. He sought

damages for injuries sustained in the accident and his wife presented claims for loss of consortium.

The district court, applying Michigan law, found on summary judgment that Visteon did not owe

---

    [*]The Honorable David A. Katz, United States District Judge for the Northern District of
Ohio, sitting by designation

Kessler a duty of care because of the open and obvious nature of the hazard. We reverse. The district court erroneously combined and dismissed two distinct allegations of unreasonable risk of harm when it dismissed the danger as open and obvious. We hold that 1) Visteon, through its employee, owed Kessler a duty of care to operate its machinery in a reasonably safe manner and 2) Kessler has raised a genuine issue of material fact as to whether the operation of a forklift in proximity to pedestrians on the loading dock that day is an open and obvious *activity* that presents special aspects of danger under Michigan law.

## I

Visteon is in the business of assembling automotive components. Until recently, it was part of the Ford Corporation. On November 6, 2000, Kessler was injured when he approached an operating powered material handling vehicle ("PMHV"), commonly known as a hi-lo or a forklift. The PMHV, moving in reverse, rolled over and broke Kessler's foot, and its counter-weight struck him in the leg, knocking him over. Kessler was working for Dakota Leasing/Short Freight Lines ("Dakota"), a company that provides transportation services to and from Visteon's Utica facility, the site of the accident.

Kessler was a regular visitor to the Utica plant at the time of the accident. He made a "dedicated run" to the plant, five days a week. On the day of the accident, Kessler was delivering a load of dashboards for the Ford Taurus. He arrived between shifts, at about 4:00 pm, and spent some time in the plant's lounge waiting for assistance. He walked through the facility to find a Visteon employee to unload his trailer, which he parked near the fully occupied loading dock. Upon entering the loading dock, he saw Michael J. Hyde, a Visteon employee, using a PMHV to unload

another Dakota trailer. The trailer in question was not Kessler's, so, in an attempt to inform Hyde that he should be unloading a different trailer, Kessler approached, and was struck by the vehicle.

On February 19, 2003, Kessler filed his complaint alleging, *inter alia*, that Visteon had been negligent in its ownership and maintenance of the PMHV, that Visteon's employee had been negligent in the operation of the PMHV, and that these breaches of duty had resulted in severe, permanent, and irreversible injury to Kessler. He prayed for compensatory damages. On March 11, 2003, Visteon answered the complaint and asserted several affirmative defenses, including comparative negligence, failure to state a claim, and that the danger was open and obvious.

During discovery, the following evidence was produced: The Utica plant is approximately two million square feet in size. In this large facility, pedestrians share space with PMHVs. In 1994, over twenty "significant" harmful events occurred involving PMHVs and pedestrians in Visteon plants, four resulting in permanent disability. Before the accident that is the subject of this case, Visteon began a safety campaign to eliminate the dangers posed by men and machine working so closely together. The program included pedestrian safety training, increased pedestrian visibility through reflective vests on employees, and marking aisles for pedestrian and vehicular traffic, creating "green" and "red" zones. Truck drivers like Kessler who visit the plant now watch a pedestrian safety video. The loading dock where Kessler was hit is now a pedestrian red zone, a marked area with signs, where "pedestrians are not expected to be." Visteon's training videotapes, and safety standards promulgated by both the Michigan Occupational Safety and Health Administration and the American Society of Mechanical Engineers, all state that safe operation is the responsibility of a PMHV operator, that pedestrians have the right of way, and that an operator

should always look in the direction of travel. The deposition of Hyde revealed that he had viewed the videotapes and that none of the Visteon PMHVs that he operated sounded an audible warning when moving in reverse.

On December 3, 2003, Visteon moved for summary judgment. It argued that no duty was owed to Kessler where the danger presented by the operating PMHV was open and obvious. On December 22, 2003, Kessler filed a response to the motion, asserting that the open and obvious nature of the danger was irrelevant where Visteon's operator owed Kessler a duty of care to operate and maintain its PMHV in a reasonably safe manner. Kessler noted that Visteon, in its brief, had failed to cite a single case where the open and obvious exception was applied to the *conduct* of a defendant and not to a *condition* on the land. On June 30, 2004, the district court entered summary judgement for Visteon on all claims. *Kessler v. Visteon*, No. 03-70700 (E.D. Mich. June 30, 2004).

On July 2, 2004, Kessler moved for reconsideration under Rule 59(e). *See* Fed. R. Civ. P. 59(e). He also moved to certify the question to the Michigan Supreme Court, arguing that the validity of Visteon's defense was a question of first impression. *See* Mich. Ct. R. § 7.305(b) (allowing federal judges to certify questions to the Michigan Supreme Court). Both motions were denied. *Kessler v. Visteon*, No. 03-70700 (E.D. Mich. July 21, 2004) (denying motion to reconsider); *Kessler v. Visteon*, No. 03-70700 (E.D. Mich. Aug. 11, 2004) (denying motion to certify). On August 19, 2004, Kessler timely filed his notice of appeal. *See* Fed. R. App. P. 4.

**II**

Jurisdiction in the district court was proper due to the diversity of the parties and the amount in controversy. *See* 28 U.S.C. § 1332. Kessler is a citizen of the state of Ohio and Visteon is a

corporation organized and chartered under the laws of Delaware with its principal place of business

in Michigan. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a grant of summary judgment de novo. *Williams v. Ford Motor Co.*, 187 F.3d

533, 537–38 (6th Cir. 1999). Summary judgment is appropriate where "the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a grant of summary judgment, the evidence

must be viewed in the light most favorable to the opposing party. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). That party cannot rest on its pleading or allegations,

to prevail they must present material evidence in support of their allegations. *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 324 (1986). A mere scintilla of evidence is insufficient; there must be

evidence on which the jury could reasonably find for the non-moving party. *See Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In this case, jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C.

§ 1332(a)(1). Accordingly, we apply state law as decided by the Michigan Supreme Court. *See Erie*

*R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *State Farm Fire and Cas. Co. v. McGowan*, 421 F.3d

433, 436 (6th Cir. 2005). If the Michigan Supreme Court has not yet addressed the issue presented,

we must predict how it would rule, by looking to "all relevant data," including state appellate

decisions. *Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995)

(citing *Bailey v. V & O Press Co., Inc.*, 770 F.2d 601, 604 (6th Cir.1985)); *See also Owens Corning*

*v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 257 F.3d 484, 491 (6th Cir. 2001). "[I]n all cases

where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. of N.Y. v. York*, 326 U.S. 99 (1945); *See also Powell v. Jacor Comm. Corp.*, 320 F.3d 599, 602–03 (6th Cir. 2003).

## III

### A

We first examine whether Visteon owed Kessler a duty of care from its employee's conduct and operation of the PMHV in its loading dock. The first element of an action in negligence is duty. *See Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 681 n.10 (Mich. 1992); W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 30 (5th ed. 1984) [hereinafter Prosser & Keeton]. "Duty exists because the relationship between the parties gives rise to a legal obligation." *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 188 (Mich. 1995); *See also Maiden v. Rozwood*, 597 N.W.2d 817, 829 (Mich. 1999). Duty is an obligation "to conform to a certain standard of conduct, for the protection of others against unreasonable risks." *Ibid.* In Michigan, there is generally "a duty to exercise reasonable care *in how one acts* to avoid physical harm to persons and tangible things." 18A Michigan Civil Jurisprudence, Negligence § 9 (emphasis added).

> Duty may be established "specifically by mandate of statute, or it may arise generally by operation of law under application of the basic rule of the common law, which imposes on every person *engaged in the prosecution of any undertaking* an obligation to use due care, or to so *govern his actions* as not to unreasonably endanger the person or property of others."

*Riddle*, 485 N.W.2d at 681 (quoting *Clark v. Dalman*, 150 N.W.2d 755 (1967)) (emphasis added).

Congruently, the Restatement is broad in its initial definition of negligence. It defines negligence as "*conduct* which falls below the standard established by law for the protection of others against unreasonable risk of harm." Restatement (Second)of Torts § 282 (emphasis added). Of course, that standard "is that of a reasonable man under like circumstances." *Id.* at § 283. "A negligent *act* or omission may be one which involves an unreasonable risk of harm to another . . ." *Id.* at § 302 (emphasis added). We note these references to *conduct* and *actions* because it is clear that actions are a main source of negligent behavior. The Michigan Courts acknowledge this:

> It is well established that those who *undertake particular activities* or enter into special relationships assume a distinctive duty to procure knowledge and experience regarding that activity, person, or thing. For example, a landlord must inspect a premises to keep it in a reasonably safe condition. Physicians must keep reasonably abreast of current advances in their field. Manufacturers must diligently inspect their products to discover lurking dangers. Lastly, a carrier owes to its passengers the duty of discovering all detectable defects.

*Schultz v. Consumers Power Co.*, 506 N.W.2d 175, 178 (Mich. 1993) (emphasis added). We think that the Michigan Supreme Court would not hesitate to add that the operators of PMHVs must take reasonable measures to avoid injury to pedestrians. Whether Visteon's employee breached this duty, we think, should be a question for the jury.

In their complaint, the Kesslers clearly alleged a breach of this duty. Kessler argues that Visteon should be held liable "vicariously for the negligence of its employee" who "failed to use due care and caution in the operation and control" of the PMHV. Compl. at ¶ 7. Visteon argues, and the district court agreed, that regardless of the actions of its employee it cannot be held liable because the danger was open and obvious. Although Visteon has a more limited duty to Kessler as an owner of the property on which the injury occurred, it has an *independent* duty to Kessler arising

vicariously from its employee's operation of the PMHV. This latter duty is unaffected by the open

and obvious nature of the hazard because it is unrelated to premises liability.

B

Separate and distinct from any duty that flows from conduct, the Michigan courts recognize

a duty of care that arises solely from the possession of land—premises liability. *Kubczak v. Chem.*

*Bank & Trust Co.*, 575 N.W.2d 745, 747 (Mich. 1998) (premises liability requires possession and

control over the land). "In a premises liability claim, liability emanates merely from the defendant's

duty as an owner, possessor, or occupier of land." *Laier v. Kitchen*, 702 N.W.2d 199, 208 (Mich.

App. 2005).

> [S]ocial policy imposes on possessors of land a legal duty to protect their invitees on
> the basis of the special relationship that exists between them. The rationale for
> imposing liability is that the invitor is in a better position to control the safety aspects
> of his property when his invitees entrust their own protection to him while entering
> his property.

*Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 186 (Mich. 1995) (citation omitted); *see also Riddle*

*v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 679 (Mich. 1992). Invitees are those who enter

a premises on the invitation of the owner to conduct some business there. *See* Prosser & Keeton,

§ 61. Typically they are people such as customers and "drivers calling for or delivering goods

purchased or sold." *Ibid.* "In general, a premises possessor owes a duty to an invitee to exercise

reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous

condition on the land." *Lugo v. Ameritech Corp.*, 629 N.W.2d 384, 386 (Mich. 2001). But, because

possessors of land are not the "absolute insurers of the safety of their invitees," *Bertrand*, 537

N.W.2d at 188, "this duty does not generally encompass removal of open and obvious dangers" *Lugo*, 629 N.W.2d at 386.  *See also* Prosser & Keeton § 61.

Therefore, it is clear that ordinary negligence and premises liability describe two distinct theories of negligence liability:  one flows from actions, the other from possession.  Both place the burden of limiting injuries upon the person most likely to be effective in doing so.

## C

The district court in this case recognized that at least two theories of liability were alleged in Kessler's complaint.  The court identified the duty that the law "imposes on every person engaged in the prosecution of any undertaking an obligation to use due care," *Kessler v. Visteon*, No. 03-70700, slip op. at 5–6 (E.D. Mich. June 30, 2004) [hereinafter *Kessler*] (citing *Riddle*, 485 N.W.2d at 679), and a duty that a "premises owner owes to a visitor on his property." *Ibid.*  From that point, however, the district court conflated the two analyses into one and proceeded to discuss duty exclusively in terms of  premises liability:

> Defendant argues it owed no duty to Plaintiff because the forklift presented an open and obvious danger and is devoid of special aspects making it unreasonably dangerous.  Plaintiff seeks to avoid the open and obvious doctrine by insisting this is not a premises liability case, but a case of ordinary negligence, and that the open and obvious doctrine is inapplicable. The Court disagrees with Plaintiff's theory [of] liability.  Plaintiff was injured while on Defendant's premises from an activity on the premises.  The various standards of care owed to visitors like Plaintiff apply because Defendant is the landowner.  The open and obvious doctrine applies not only to conditions on the land, but to *activities* which occur on the land as well.

*Kessler* at 8 (footnotes and citations omitted, emphasis added).  In reaching this conclusion, the district court relied on *James v. Alberts*, 626 N.W.2d 158 (Mich. 2001), *Pelzner v. Meijer, Inc.*, No.

No. 04-2056
Kessler v. Visteon Corp

230448, 2002 WL 1275509 (Mich. App. June 4, 2002) (unpublished, per curiam), and the

Restatement. We shall address each in turn.

In *James*, the Michigan Supreme Court held that it no longer recognized the volunteer

doctrine.[1] 626 N.W.2d at 162. To guide the lower court on remand, the court noted:

> the present case is a premises liability action. James' claim is that he was injured by
> a condition of the land. The alleged injury occurred while he and Alberts were
> digging the trench; however, James contends that it arose out of a condition of the
> land, not out of the activity itself. In his complaint, James alleges that Alberts
> breached his duties as a landowner.

626 N.W.2d at 162. The district court, in the case at bar, interpreted this language in a footnote and

concluded that:

> Nowhere does the Court rule that the analysis is different when a injury occurs from
> an activity rather than a condition of the land. To the contrary, the Michigan
> Supreme Court has adopted § 343A of the Restatement which expressly states that
> the open and obvious doctrine applies to activities on a landowner's land as well as
> conditions on the land. . . . Finally, Plaintiff's pleading of "ordinary negligence"
> does not change the result that the incident occurred on Defendant's property.

*Kessler* at 8 n.5 (citations omitted). We disagree.

The purpose of the quoted language in *James* was to guide the lower court's analysis towards

premises liability where it otherwise might assume that ordinary negligence was implicated. Since

the injury resulted from an activity of the defendant, the trial court might have simply assumed that

a duty of due care was owed and used those principles to settle the dispute. To avoid this

conclusion, and to respect the plaintiff's position as the "master of his complaint," *see Ernst v.*

---

[1]The volunteer doctrine bars recovery from a servant's master where the servant's negligence
injures one who voluntarily assists him.

- 10 -

*Rising*, 427 F.3d 351, 356 (6th Cir. 2005) (en banc), the Michigan Supreme Court used the conjunction "however" to introduce the premises liability element and limit the assumption that the theory was ordinary negligence. The court was not instructing that ordinary negligence claims cannot proceed when the defendant's negligence occurs on his own land. To the contrary, it was merely highlighting the duty that James alleged was breached. Further, the Michigan Supreme Court notes that James's allegation is that Alberts "breached his duties as a landowner"—not as a trench-digger.

The district court next relies on § 343A of the Restatement to conclude that "the open and obvious doctrine applies not only to conditions on the land, but to activities which occur on the land as well." That section of the Restatement states:

> (1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

The district court erred here by not reading § 343A as being *in pari materia* with the rest of the Restatement. When evaluating the scope of § 343A, we note that it is located in a chapter entitled "Liability For Condition And Use Of Land" and in a sub-topic entitled "Special Liability Of Possessors Of Land To Invitees." In contrast, the definition of negligence in § 282 resides in a section entitled "General Principles." In our reading of the Restatement, "General Principles" are not modified by "Special Liability," but are supplemented by them. It is this special liability that needs further explanation because there need not be *any action* by the landowner to incur liability.

The district court's reading, however, erroneously promotes the special liability of a premises owner to a general principle.

The district court placed its heaviest reliance on *Pelzner v. Meijer, Inc.*, an unreported, per curiam opinion of the Court of Appeals. No. 230448, 2002 WL 1275509 (Mich. App. June 4, 2002). In *Pelzner*, the court held that the defendant was not liable for injuries caused when its employee injured a customer while pushing a train of shopping carts because the hazard was open and obvious. *Id.* at *2. The court held that neither Meijer nor their employee owed any duty to the plaintiff. *Id.* at *1. The court relied on *Lugo*, *Bertrand*, and *Riddle*, *supra*, for this holding. The *Pelzner* court was in error and was subsequently corrected by the Court of Appeals in *Laier v. Kitchen*, 702 N.W.2d 199, 205 (Mich. App. 2005). *Laier* overruled *Pelzner*. *See Tebo v. Havlik*, 343 N.W.2d 181, 185 (Mich. 1984) (decision by panel of the Court of Appeals is controlling statewide until contradicted by another panel or reversed or overruled by the Michigan Supreme Court). *See also White v. Ins. Co. of State of Pa.*, 405 F.3d 455, 458 (6th Cir. 2005) (applying decision filed after district court's judgment to case pending on appeal).

In *Laier*, the court held that "the open and obvious danger doctrine is inapplicable to [] ordinary negligence claim[s]." *Laier*, 702 N.W.2d at 204. Laier was killed when the bucket of a front-end loading tractor crushed him during an attempted repair conducted on the property of the defendant. *Id.* at 204–05. The ensuing wrongful death action alleged defendant's negligence. *Id.* at 205. The trial court granted summary disposition, holding that the landowner had no duty with regard to open and obvious dangerous activity conducted on his land. *Ibid.* The Court of Appeals reversed, "because the trial court and the parties failed to recognize ordinary negligence as a theory

of recovery separate from premises liability." *Id.* at 213 (Hoekstra, P.J., concurring). The rule in *Laier* is that when a claim "sounds in ordinary negligence . . . the open and obvious danger doctrine is inapplicable to such a claim." *Ibid. Laier* has been recognized by both the Michigan and federal courts for this proposition. *See Henderson v. Hammer Bldg. & Restoration, Inc.*, No. 255187, 2005 WL 3234906 (Mich. App. Dec. 1, 2005); *Summers v. Carter's Inc.*, No. 255028, 2005 WL 2372075 (Mich. App. Sep. 27, 2005); *Walker v. Eagle Press & Equip. Co.*, No. 03-72850, 2005 WL 2072083 (E.D. Mich. Aug. 26, 2005).

In addition, the district court found that Kessler's reliance on *Dooley v. Northwest Airlines, Inc.*, No. 01-CV-74132-DT, 2002 WL 31235765 (E.D. Mich. Sept. 13, 2002), was misplaced. Although the factual situation in that case was not directly analogous to the one faced in the case at bar, we believe that the law was accurately described when the *Dooley* court declined the defendant's invitation "to further expand the open and obvious doctrine to encompass ordinary negligence." *Id.* at *6. In *Dooley*, the plaintiff asserted ordinary negligence claims against Northwest after he was hit by a Northwest vehicle operating near an airport terminal. *Id.* at *1. The *Dooley* court held that a defense of open and obvious was inapplicable where the plaintiff was not injured on Northwest's property, *id.* at *4, and was also correct when it noted that "Michigan law only appears to apply the [open and obvious] doctrine in the limited areas listed above[, premises and products liability]" and not in ordinary negligence. *Id.* at *5.

We note, however, that even if *Laier* had not been decided, we would still hold that *Pelzner* is in error for two reasons. First, the great weight of cases demonstrates that the open and obvious exception is to be applied to premises liability theories only and there exists an almost complete lack

of cases relying on the theory of the holding in *Pelzner*. Second, the Michigan Supreme Court has stated a vision of social policy that is fundamentally at odds with the holding in *Pelzner*. This policy requires that the open and obvious exception be confined to premises and products liability theories. *Pelzner*, and one other case filed subsequently, but before the judgment in *Kessler*, *Jacob v. Cont'l Lanes, Inc.*, No. 244506, 2004 WL 405889 (Mich. App. Mar. 4, 2004) (finding no duty where employee collided with customer), stand alone as authority for the extension of the open and obvious doctrine to claims of ordinary negligence. Neither is a published case, so neither has any binding force in Michigan courts. *See* Mich. C.R. 7.215(C)(1) (unpublished opinion is not precedentially binding). Although the doctrine has been extended in a reported case to an injury caused by a loose dog, *see Klimek v. Drzewiecki*, 352 N.W.2d 303-0046961, 363–64 (Mich. App. 1984), the open and obvious exception has been applied only in premises liability in the vast majority of cases.[2]

---

[2]Some recent examples: *Mann v. Shusteric Enters.*, 683 N.W.2d 573 (Mich. 2004) (ice); *Teufel v. Watkins*, 705 N.W.2d 164 (Mich. App. 2005) (snow and ice); *Stopczynski v. Woodcox*, 671 N.W.2d 119 (Mich. App. 2003) (swimming pool); *Joyce v. Rubin*, 642 N.W.2d 360 (Mich. App. 2002) (snow and ice); *Corey v. Davenport Coll. of Bus.*, 649 N.W.2d 392 (Mich. App. 2002) (slippery steps); *Millikin v. Walton Manor Mobile Home Park, Inc.*, 595 N.W.2d 152 (Mich. App. 1999) (guy wire); *Hughes v. PMG Bldg., Inc.*, 574 N.W.2d 691 (Mich. App. 1997) (collapsing roof); *Hottmann v. Hottmann*, 572 N.W.2d 259 (Mich. App. 1997) (collapsing roof); *Novotney v. Burger King*, 499 N.W.2d 379 (Mich. App. 1993) (wheelchair ramp); *Burton v. Duran*, No. 263463, 2005 WL 3304150 (Mich. App. Dec. 6, 2005) (collapsing roof); *Zelenko v. Stites*, No. 254691, 2005 WL 3179516 (Mich. App. Nov. 29, 2005 (tree branch); *Robertson v. Blue Water Oil Co.*, No. 254052, 2005 WL 2995676 (Mich. App. Nov. 8, 2005) (ice); *Summers v. Carter's Inc.*, No. 255028, 2005 WL 2372075 (Mich. App. Sep. 27, 2005) ( plastic wrap); *Brooks v. Burger King Corp.*, No. 252576, 2005 WL 1489488 (Mich. App. June 23, 2005) (pothole, wild dogs!); *Bizyk v. Joe Randazzo's Fruit & Vegetable, Inc.*, No. 250570, 2005 WL 387550 (Mich. App. Feb. 17, 2005) (stack of boxes); *Barrett v. Disc. Tire & Battery*, No. 250213, 2004 WL 1908335 (Mich. App. Aug. 26, 2004) (jack handle); *Emmons v. Harden Acres, LLC*, No. 246996, 2004 WL 1672435 (Mich. App. July 27, 2004) (ice); *Huber v. Jo-Ann Stores, Inc.*, No. 248437, 2004 WL 1621694 (Mich. App. July 20, 2004) (floor mat); *Knoll v. General Motors Corp.*, No. 245387, 2004 WL 512230

Therefore, even in the absence of *Laier*, we would be hesitant to use the open and obvious exception to defeat a claim based upon a theory of ordinary negligence. A possibility for the unraveling of numerous ordinary negligence suits (e.g., *Dooley*), the unnatural reading of the Restatement, and the lack of any reported cases applying the doctrine in this new fashion all counsel against Visteon's proposed expansion of the doctrine.

Finally, we note that the policy considerations guiding decisions of the Michigan Supreme Court would be effectively undermined by an extension of the open and obvious doctrine into the area of ordinary negligence. Illustrative of this concern, a recent unanimous decision of the Michigan Supreme Court held that the duty of a general contractor on a job site under the common work area doctrine is not limited by the open and obvious doctrine. *Ghaffari v. Turner Const. Co.*, 699 N.W.2d 687, 689 (Mich. 2005). The *Ghaffari* court considered whether the open and obvious exception should apply to injuries received on a construction site. *Id.* at 689. Under Michigan law, a construction site is subject to a special rule, the common work area doctrine:

> At common law, property owners and general contractors generally could not be held liable for the negligence of independent subcontractors and their employees. However, in *Funk v. Gen. Motors Corp.*, this Court departed from this traditional framework and set forth an exception to the general rule of nonliability in cases involving construction projects:
>> We regard it to be part of the business of a general contractor to assure that reasonable steps within its supervisory and coordinating

<hr />

(Mich. App. Mar. 16, 2004) (step/curb); *Buckenmeyer v. Office Max, Inc.*, No. 242953, 2003 WL 22399511 (Mich. App. Oct. 21, 2003) (ice); *Vavrick v. Bill's Auto.*, No. 238473, 2003 WL 1904350 (Mich. App. Apr. 17, 2003) (cracked pavement); *Morgan v. Makowski*, No. 238037, 2003 WL 462535 (Mich. App. Feb. 21, 2003) (tree sap); *Vandall v. Post Elec. Co.*, 1997 WL 33330692 (Mich. App. Dec. 19, 1997) (subsidence); *Osontoski v. Wal-Mart Stores, Inc.*, 143 F.3d 1027 (6th Cir. 1998) (spill).

> authority are taken to guard against *readily observable, avoidable dangers* in common work areas which create a high degree of risk to a significant number of workmen.
>
> * * *
>
> Placing ultimate responsibility on the general contractor for job safety in common work areas will, from a practical, economic standpoint, render it more likely that the various subcontractors being supervised by the general contractor will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas.

*Id.* at 689–90 (citing *Funk*, 220 N.W.2d 641 (1974)). The common work area doctrine is reserved only for construction sites because "there exist unique and distinct attributes of the construction setting that would make the rules applicable in the typical premises liability setting inappropriate."

*Id.* at 694. The *Ghaffari* court held:

> [T]he two doctrines at issue [i.e., common work area and open and obvious] are independent of and distinct from one another. The open and obvious doctrine serves as an "integral part of the definition" of the duty a premises possessor owes invitees, *see Lugo*, while the common work area doctrine "is an exception to the general rule of nonliability for the negligent acts of independent subcontractors and their employees," under which "an injured employee of an independent subcontractor [may] sue the general contractor. . ."
>
> [W]e hold that the open and obvious doctrine has no applicability to a claim under the common work area doctrine, and therefore the trial court erred in granting summary disposition in favor of defendants on the basis that the pipes at issue were an open and obvious hazard.

*Id.* at 694–95 (citing *Lugo*, 629 N.W.2d 384).

In reaching this conclusion the court discussed the policy behind both doctrines. We think that it appropriately encapsulates the problematic extension of the open and obvious doctrine in the case at bar:

> The adoption of the open and obvious doctrine in the general contractor setting would tend to thwart the goals of workplace safety advanced by our

> decisions. . . If we were to adopt the rule set forth below . . . we would effectively return to a contributory negligence regime. In such a case, no matter how negligent the general contractor was in creating or failing to ameliorate the hazard, the employee would be barred from recovery because the hazard was open and obvious.
>
> [We] recognized that such bars to recovery "provide a strong financial incentive [] to breach the duty to undertake reasonable safety precautions." Indeed, such a rule might lead to a paradoxical result—the more egregious (i.e., obvious) the safety violation, the less incentive the contractor would have to ameliorate the hazard, because of the knowledge that obviousness of the hazard would bar [his] liability for the resulting injury.

*Ghaffari*, 699 N.W.2d at 693. An expansion of the open and obvious doctrine into the realm of ordinary negligence undermines the policy goal of placing responsibility for accidents with those who are in the best position to prevent them.

**IV**

**A**

We now examine what duty Visteon owed Kessler by virtue of owning the Utica plant and the nature of the activities conducted there—whether the district court properly dismissed Kessler's premises liability claim by finding that the open and obvious nature of the hazard obviated any duty Visteon might have owed, as a property owner, to Kessler. To reiterate, Visteon's duty of care as a possesor of the land is limited.

> The largest single area in which the concept of "duty" has operated as a limitation upon liability has concerned owners and occupiers of land. . . . This development has occurred for the obvious reason that the person in possession of property ordinarily is in the best position to discover and control its dangers, and often is responsible for creating them in the first place.

Prosser & Keeton § 57. For purposes of premises liability, Michigan courts recognize three common-law categories: trespasser, licensee, and invitee. *James v. Alberts*, 626 N.W.2d 158, 162

(Mich. 2001). A landowner's duty to a visitor depends upon that visitor's status. *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 91 (Mich. 2000). The parties and the district court in this case agree that Kessler should be categorized as an invitee. "An 'invitee' is 'a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception.'" *Stitt*, 614 N.W.2d at 92 (citations omitted). Where the visitor is an invitee,

> [t]he landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards. Thus, an invitee is entitled to the highest level of protection under premises liability law.

*Ibid.* (citations omitted).

However, the duty of a landowner to his invitees has clear limits. A landowner does not owe a duty to invitees where the dangers "are so obvious and apparent that an invitee may be expected to discover them himself." *Riddle v. McLouth Steel Prods. Corp.*, 485 N.W.2d 676, 680 (Mich. 1992). Under such a condition, our negligence analysis is at an end—if there is no duty, then no matter the standard of care, causation or harm, no negligence can lie. The interaction between the open and obvious exception and the duty owed to invitees has been described in this way:

> [T]he "no duty to warn of open and obvious danger" rule is a defensive doctrine that attacks the duty element that a plaintiff must establish in a prima facie negligence case. A negligence action may only be maintained if a legal duty exists which requires the defendant to conform to a particular standard of conduct in order to protect others against unreasonable risks of harm. If the plaintiff is a business invitee, the premises owner has a duty to exercise due care to protect the invitee from dangerous conditions. However, where the dangers are known to the invitee or are

> so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee.

*Id.* at 681 (citations omitted);  *see also* Restatement (Second) of Torts § 341A.  *But cf. Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384, 393 (Mich. 2001) (Cavanagh, J., concurring) (believing the majority opinion to be in error and that § 341 and prior Michigan cases refer not to duty, but to the applicable standard of care).  "Accordingly, the open and obvious doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." *Lugo*, 629 N.W.2d at 386.  If the court finds that, as a matter of law, there is no duty owed, that negligence claim must be dismissed.

The Michigan Supreme Court considered the application of the open and obvious exception in two incidents involving accidents befalling customers on the steps of the businesses they patronized.  Both actions were combined in one case, *Bertrand v. Alan Ford, Inc.*, 537 N.W.2d 185, 188 (Mich. 1995).  In *Bertrand* the court seized upon those dangers that could be considered unreasonable and held that the open and obvious exception should not operate to eliminate a duty in those circumstances:

> With the axiom being that the duty is to protect invitees from unreasonable risks of harm, the underlying principle is that even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees.  Consequently, because the danger of tripping and falling on a step is generally open and obvious, the failure to warn theory cannot establish liability.  However, there may be *special aspects* of these particular steps that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe.

*Ibid.* (emphasis added).  Applying this rule, the court found the exception applied to negate any duty

where the injured plaintiff tripped on a restroom step because she "failed to see it."  *Id.* at 191.

Because "[t]he plaintiff failed to establish anything unusual about the step . . . the plaintiff has not

presented any facts that the step posed an unreasonable risk of harm."  *Ibid.*

In the second case, the plaintiff fell while waiting to have her car serviced.  To reach the

cashier, she needed to navigate a narrow passage between a door and a set of vending machines.

While doing this, she fell.  *Id.* at 191–92.  The court held that the premises "may be unreasonably

dangerous."  *Id.* at 192.  When considering the condition of the land, the court found a "genuine

issue regarding whether the construction of the step, when considered with the placement of the

vending machines and the cashier's window, along with the hinging of the door, created an

unreasonable risk of harm, despite the obviousness or the invitee's knowledge of the danger of

falling off the step."  *Ibid.*

> In the light most favorable to the plaintiff, one can reasonably argue that the defendant should have reasonably anticipated a congested pedestrian traffic pattern causing an invitee to fall off the step.
>     We cannot find as a matter of law that the risk of harm was reasonable. Because a genuine issue existed regarding whether the defendant breached its duty to protect the plaintiff against an *unreasonable* risk of harm, in spite of the obviousness or of the plaintiff's knowledge of the danger, summary disposition was inappropriate.  Whether this risk of harm was unreasonable and whether the defendant breached a duty to exercise reasonable care by failing to remedy the danger are issues for the jury to consider.

*Id.* at 193 (emphasis in original).  Under this standard, we must apply the rules of summary judgment

to our evaluation of the unreasonableness of the danger presented to decide if it is proper to

eliminate the duty of the defendant and deny any recovery to the plaintiff.  *See Howe v. Detroit Free*

*Press, Inc.*, 555 N.W.2d 738, 741 (Mich. App. 1996) (where factual circumstances give rise to duty, the existence of those facts must be determined by a jury).

Noting a clear distinction between *Bertrand* and this case, Kessler argues that the open and obvious exception should only be applied to relieve a premises owner of a duty of due care where the danger is a *condition* on the land and not an *activity* conducted on it. We cannot agree. Although all controlling Michigan Supreme Court precedent (*Lugo*, *Bertrand*, *James*, and *Riddle*, *supra*) arose from facts that allege dangerous conditions on the land, (*viz.*, a pothole, steps, buried cable, and slippery floors) those cases lead us to the inexorable conclusion that, if the Michigan Supreme Court had occasion to consider the issue, it would hold that § 343A applies to activities as well as conditions on the land. *See Kingsley Assocs., Inc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995) (where the Michigan Supreme Court has not considered the issue we must predict its ruling).

The district court relied on the Michigan Supreme Court's comfort with the language of § 343A of the Restatement and held that the open and obvious exception applies to both activities and conditions on the land. "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Kessler* at 6 (quoting Restatement (Second) of Torts § 343A). This statement is reenforced by *Bertrand* where the court stated that, "§ 343A applies in Michigan." 537 N.W.2d at 187.

Kessler lists a number of cases purporting to show that Michigan premises liability law supports a distinction between activities and conditions on the land. Specifically, *James v. Alberts*,

626 N.W.2d 158, 162 (Mich. 2001), provides no support for this contention. The court in *James* merely acknowledges the distinction between two theories of negligence, premises liability and simple negligence. The *James* court never discusses, or mentions, the open and obvious exception in its discussion of premises liability. *Id.* at 162–63. *Madley v. The Evening News Ass'n*, 421 N.W.2d 682, 685 (Mich. App. 1988), is similarly unhelpful. Again, the open and obvious doctrine is never implicated or discussed. Additionally, the accident there was on a city street, not on the defendant's property, and any statement by the court construing the scope of an exception to premises liability is clearly dicta. Lastly, *Stanton v. City of Battle Creek*, 647 N.W.2d 508, 512 (Mich. 2002), is a case concerning exceptions that apply to the doctrine of governmental immunity, not premises liability.

Visteon relies on *Millikin v. Walton Manor Mobile Home Park, Inc.*, 595 N.W.2d 152, 155 (Mich. App. 1999), for the proposition that the open and obvious doctrine applies to both activities and conditions on the land. *Millikin* does clearly evince support of the Restatement when it says that, "[a] possessor of land is not liable to his invitees for physical harm caused to them *by any activity or condition on the land* whose danger is known or obvious to them," 595 N.W.2d at 155 (quoting *Riddle*, 485 N.W.2d 676 at 681) (emphasis in *Millikin*, not in *Riddle*). Again, in *Riddle*, although not faced with facts that required it adoption, the Michigan Supreme Court quoted from the Restatement and noted that it "correctly define[d] the law regarding a premises owner's duty of care to invitees." 485 N.W.2d at 681.

B

Most recently, the Michigan Supreme Court considered the open and obvious doctrine in

*Lugo v. Ameritech Corp., Inc.*, 629 N.W.2d 384 (Mich. 2001). There, the court held:

> In sum, the general rule is that a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk.
>
> * * *
>
> Consistent with *Bertrand*, we conclude that, with regard to open and obvious dangers, the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability.

*Id.* at 386–87. Accordingly, we evaluate the results of the reasonableness investigation specified

in *Bertrand* in light of the summary judgment standard.

The *Lugo* court offered some examples of "special aspects." A risk that is unavoidable, such

as the sole exit of a store that is covered with standing water, making the condition "effectively

unavoidable," presents special aspects. *Id.* at 387. Or, "an unguarded thirty foot deep pit in the

middle of a parking lot." *Ibid.* The danger of falling in the pit presents a risk of injury so severe that

maintaining it without warning or protective measures becomes unreasonable. A common pothole,

in contrast, does not "give rise to these special aspects." *Id.* at 388. It is open and obvious and does

not present any special aspects to rebut the open and obvious exception to premises liability. "In

sum, only those special aspects that give rise to a *uniquely high likelihood of harm or severity of*

*harm* if the risk is not avoided will serve to remove that condition from the open and obvious danger

doctrine." *Ibid.* (emphasis added). Finally, according to the *Lugo* court:

> [T]his "special aspects" inquiry serves to concretely focus trial courts on the showing that must be made in evaluating motions for summary disposition in this context. In our view, this approach is consistent with § 343A of the Restatement, which indicates that a possessor of land is only liable to invitees for harm caused by an obvious condition if the possessor should "anticipate the harm." Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition.

*Id.* at 390.

In evaluating Kessler's premises liability claim, the district court correctly located the applicable law in *Lugo* and understood that it "must determine whether the danger was open and obvious" and if so, that it must "consider whether the evidence presented creates a genuine issue of material fact as to whether there are 'special aspects' of the danger that should prevail in imposing [a duty] on the defendant." *Kessler* at 7. The district court, in this analysis, considered *Lugo*—where the parking lot pothole was open and obvious and the plaintiff had created no issue of material fact as to whether the common pothole possessed any special aspects of danger. The district court noted that in the two situations considered by *Bertrand*, one presented an issue sufficient to survive summary judgment and was properly an issue for the jury to consider. *Kessler* at 10 (citing *Bertrand*, 537 N.W.2d at 193). Yet, the district court granted summary judgment on a set of facts we find to be far more complex and potentially dangerous than the step in *Bertrand*. Here, the district court held:

> [T]he forklift's only possible "special aspect," its potential for severe harm, was known to [Kessler] and should have been known. Just as the danger of walking behind a moving forklift was open and obvious, so was the severeness [sic] of the danger. A cause of injury is not removed from the open and obvious doctrine where the "special aspect" should have been known to the plaintiff. Therefore Defendant's motion for summary judgment is granted and this case is dismissed.

*Id.* at 12. The conclusion of the district court requires reversal for two reasons. First, it improperly analyses the special aspects of the danger confronted by Kessler, and secondly, it negates any significant factor contributing toward a finding of special aspects by considering Kessler's subjective knowledge of the danger.

A diligent reading of *Lugo*, and a survey of the cases presented by both Kessler and Visteon, are convincing evidence that the district court wrongly granted summary judgment where Kessler has created a genuine issue of material fact as to whether the situation on the loading dock that day was unreasonably dangerous. In *Lugo*, special aspects are those characteristics of a danger that make the risk of harm unreasonable. 629 N.W.2d at 390–91 ("if an open and obvious condition lacks some type of special aspect regarding the likelihood or severity of harm that it presents, it is not unreasonably dangerous"). *Lugo* provides an illustration: a puddle of standing water adjacent to a door that makes traversing it, "effectively unavoidable," presents special aspects. *Id.* at 387. Here, there is enough evidence in the record to create a material issue of fact as to whether Kessler could have "effectively avoid[ed]" an encounter with a PMHV. It is undisputed in the record that Kessler had unrestricted movement in the Utica plant and that conditions in the plant were constantly changing, with PMHVs mixing with pedestrian traffic. Applying this example, the district court should have recognized a set of facts that could be considered special aspects.

The second example in *Lugo* is of a thirty-foot-deep pit. *Ibid.* This example, according to the court, serves to illustrate a situation presenting special aspects because of its substantial risk of death or severe injury. Accordingly, in this record, there is undisputed evidence of a number of PMHV injuries occurring at Visteon plants, many leading to severe injury. Thus, a jury could

reasonably conclude, and the district court ignored the fact, that a thirty-foot fall might equal in severity a collision with an PMHV. As a third example, we believe that the factual situation in the case at bar is more hazardous than the corridor and vending machine combination in *Bertrand* that was held to be unreasonably dangerous, 537 N.W.2d at 193, a conclusion that was nowhere disputed in *Lugo*.

We further note that other circumstances in premises liability claims have been held to present special aspects that also appear far less dangerous than the situation described in the instant case. Situations found to contain special aspects include: falling through a roof after stepping upon an eave that collapses, *Hughes v. PMG Bldg., Inc.*, 574 N.W.2d 691, 696 (Mich. App. 1997); slipping and falling on a spill in a supermarket aisle, *Osontoski v. Wal-Mart Stores, Inc.*, 143 F.3d 1027, 1028 (6th Cir. 1998) (analysis under *Bertrand*); and falling from a roof while repairing it, *Hottmann v. Hottmann*, 572 N.W.2d 259, 262 (Mich. App. 1997).

Conversely, the situations found not to contain special aspects are far more mundane than those presented in the instant case. These include, walking into a fixed and immovable guy wire, *Millikin v. Walton Manor Mobile Home Park, Inc.*, 595 N.W.2d 152, 157 (Mich. App. 1999); tripping into an ordinary pothole, *Lugo, supra*; falling over a wheelchair access ramp, *Novotney v. Burger King Corp.*, 499 N.W.2d 379, 380 (Mich. App. 1993); and slipping on snow and ice, *Buckenmeyer v. Office Max, Inc.*, No. 242953, 2003 WL 22399511 (Mich. App. Oct. 21, 2003) (unreported, per curiam), *but see Mann v. Shusteric Enters., Inc.*, 683 N.W.2d 573, 579 (Mich. 2004) (noting that accumulations of ice and snow can present special aspects).

In looking to these examples, we further note that Visteon's own training videotapes included the statement, "To do this job, you have to operate your vehicle in a space that's also occupied by pedestrians and other vehicles. Your ability to safely control your vehicle and the load you're transporting is sometimes the one factor that can prevent *a potentially hazardous situation from turning into a disaster*" (emphasis supplied).

Accordingly, we hold that summary judgment was here improper where there exists a genuine issue of material fact as to whether or not the operation of PMHVs on the Utica plant's loading dock on the day in issue was unreasonably dangerous. Assuming, *arguendo*, that the activity was open and obvious, the determination was properly a question for the jury.

> Because a genuine issue existed regarding whether the defendant breached its duty to protect the plaintiff against an unreasonable risk of harm, in spite of the obviousness or of the plaintiff's knowledge of the danger, summary disposition was inappropriate. Whether this risk of harm was unreasonable and whether the defendant breached a duty to exercise reasonable care by failing to remedy the danger are issues for the jury to consider.

*Bertrand*, 537 N.W.2d at 193. *See also Lugo*, 629 N.W.2d at 387 ("the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm").

**V**

We think it appropriate to provide a guide to the correct application of Kessler's subjective knowledge of the conditions at the Utica plant. First, it is proper to use Kessler's subjective

knowledge of the plant as a factor in concluding that the danger posed by the PMHV was open and

obvious.  The district court was correct when it noted that:

> Plaintiff is an experienced truck driver, having driven tractor-trailers since he was 21 years old.  For five days a week, three to four weeks prior to the incident, Plaintiff had been on dedicated run . . . .  was admittedly familiar with the dock and loading operations; namely that forklifts operated in the dock . . . .  Given Plaintiff's background and experience . . . there can be no question Plaintiff understood the dangers presented by walking in the loading dock behind a moving forklift.

*Kessler* at 10–11.  This evidence and analysis is proper where it is used to establish that the danger

was open and obvious.  *See Riddle*, 485 N.W.2d at 681 (defining open and obvious as including

"where the dangers are *known* to the invitee") (emphasis supplied).  We also note that another factor

the district court could properly weigh in its analysis is that Kessler's experience might inform him

that proper PMHV operation requires that the driver always face the direction of travel.

However, using Kessler's knowledge to evaluate the special aspects of the danger presented

by PMHVs on the loading dock would be incorrect.  In *Lugo*, the Michigan Supreme Court makes

clear that when evaluating a danger for special aspects, it is the condition of the premises that is at

issue, nothing else.  629 N.W.2d 384, 390 (Mich. 2001).  So, "the fact that the plaintiff was also

negligent would not bar a cause of action." *Ibid.*  "[I]t is important for courts in deciding summary

disposition motions by premises possessors in 'open and obvious' cases to focus on the objective

nature of the condition of the premises at issue, not on the subjective degree of care used by the

plaintiff. *Ibid.  See also Mann v. Shusteric Enters., Inc.*, 683 N.W.2d 573, 577 (Mich. 2004)

(concluding that while investigating both open and obvious and special aspects conditions,

fact-finder must consider the condition of the premises, not the condition of the plaintiff.).

Therefore, it would be error to conclude that operation of PMHVs in a pedestrian occupied area does not present special aspects because the "potential for severe harm, was known to the Plaintiff." *Kessler* at 12.

## VI

For the reasons stated above, we **REVERSE** the district court's entry of summary judgement and **REMAND** for further consideration not inconsistent with this opinion.