Christopher HORN, by his Limited Conservator, Gary R. PARKS, Plaintiff–Appellant,

v.

MADISON COUNTY FISCAL COURT, Ron Devere, Judge Executive George Robbins, Larry Combs, Fornis Bark, Farris Parks, and Peggy Rice, Individually and in their Official Capacities, Defendants–Appellees.

No. 92–6010.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 30, 1993.

Decided April 21, 1994.

C. Thomas Hectus (argued and briefed), Williams & Wagoner, Louisville, KY, for defendants-appellees.

Before: JONES and SUHRHEINRICH, Circuit Judges; and McKEAGUE, District Judge.[*]

McKEAGUE, District Judge.

Appeal is taken from the judgment of the United States District Court for the Eastern District of Kentucky upon jury verdict finding that defendant Ron Devere was not negligent in his treatment of plaintiff Christopher Horn, a juvenile. Plaintiff-appellant sustained injury when he attempted suicide while housed at the Madison County Detention Center. The district court, the Honorable Karl S. Forester, had earlier dismissed plaintiff's claim under 42 U.S.C. § 1983, asserting rights under the Juvenile Justice and Delinquency Prevention Act of 1974 (hereinafter "Juvenile Justice Act" or simply "Act"). The district court had also directed a verdict in favor of the defendants on a second § 1983 claim, asserting rights under the Eighth Amendment. Plaintiff–Appellant asserts the district court erred (1) in ruling the Juvenile Justice Act is not enforceable through a private cause of action; (2) by directing a verdict on plaintiff's Eighth Amendment claim; (3) by prohibiting introduction of evidence of the Act's requirements in support of his Eighth Amendment claim; and (4) by denying him a directed verdict on his claim that incarceration of a juvenile in an adult facility is unconstitutional per se.

## I.

On May 25, 1990, Christopher Horn, aged 17, pleaded guilty to a robbery charge in the Madison County District Court. He was committed to the Cabinet of Human Resources and released to the custody of his parents pending placement under the condition that he remain "within arm's reach of his parents." On May 30, 1990, Horn's parents reported that he had left home without permission and his whereabouts were unknown.

C. William Swinford, Jr. (briefed), Edward E. Dove (argued and briefed), Lexington, KY, for plaintiff-appellant.

[*] The Honorable David W. McKeague, United States District Judge for the Western District of Michigan, sitting by designation.

Mrs. Horn signed a complaint and a "pick-up order" was issued by District Judge Julia Adams, charging violation of conditional release. The next day, at approximately 1:00 p.m., Horn turned himself in at the office of his court designated worker, Mary Ann Haynes. Horn was then transported to the Madison County Detention Center by Deputy Sheriff Steve King pursuant to Judge Adams' order. Haynes accompanied them.

The Madison County Detention Center is an adult jail, newly opened in January 1990, and designated for use as an intermittent juvenile holding facility. That is, a juvenile offender could be lodged there under statutorily prescribed conditions for a period not to exceed 24 hours.

Horn was received at the detention center at approximately 1:40 p.m. on May 31, 1990. Haynes accompanied him during the juvenile intake procedure. She later testified at trial that he appeared to be coherent and in a good mood; not "high on paint" or under the influence of any other substance. She testified that he showed some nervousness, but nothing out of the ordinary for one being booked into a jail. These observations were corroborated by the testimony of Deputy Jailer James Sparks, who conducted the intake procedure.

Horn was escorted to his cell in the juvenile detention area at approximately 1:45 p.m. He was subsequently checked at 1:58 p.m. and 2:15 p.m., giving no indication on either occasion that he was upset. He was watching television and, on request, was given bed linens and a washcloth. At approximately 2:20 p.m., defendant County Jailer Ron Devere discovered Horn hanging from the bunk of his cell with a bed sheet tied around his neck. Devere took the weight off of Horn's neck and called for assistance. Seconds later, when Sparks responded and arrived at the cell, he observed Devere laying Horn on the floor with a sheet tied around his neck. Sparks determined that Horn was not breathing, retrieved a CPR mouthpiece, and began cardio-pulmonary resuscitation. Horn started breathing on his own. Due to oxygen deprivation, Horn suffered brain damage and paralysis. He continues to be confined to a wheelchair.

In this action, defendant Devere is alleged to be liable because he is responsible as County Jailer for managing the detention center and for caring for and protecting all persons confined there. In addition, the Madison County Fiscal Court and all of its members are said to be liable. The Fiscal Court is responsible for the policies, practices and customs of the detention center, including the hiring, training, supervision and control of the jailer and his deputies.

## II.

The district court dismissed plaintiff-appellant Horn's claim based on the Juvenile Justice Act, because it found the Act not enforceable by private cause of action under 42 U.S.C. § 1983. We review this conclusion of law *de novo*. *Waxman v. Luna*, 881 F.2d 237, 240 (6th Cir.1989).

Section 1983 provides a cause of action for deprivation under color of state law, of any rights, privileges or immunities secured by the Constitution or laws of the United States. That is, violations of federal statutes, as well as constitutional violations, are actionable, but only if (1) the statute creates enforceable "rights, privileges or immunities," and (2) Congress has not foreclosed such enforcement in the enactment itself. *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 508, 110 S.Ct. 2510, 2516–17, 110 L.Ed.2d 455 (1990).

The Juvenile Justice Act is an exercise of congressional spending power. It was intended to improve the quality of juvenile justice in the United States. 42 U.S.C. § 5602(b). One of the specific stated purposes of the Act is "to assist State and local governments in removing juveniles from jails and lockups for adults." 42 U.S.C. § 5602(a)(8). The Act purports to serve this purpose by providing necessary resources to, inter alia, "increase the capacity of State and local governments and public and private agencies to conduct effective juvenile justice and delinquency prevention and rehabilitation programs." 42 U.S.C. § 5602(b)(4). Specifically, funds are provided to states which submit plans carrying out the Act's purposes and complying with numerous re-

quirements prescribed at 42 U.S.C. § 5633(a). It is undisputed that the Commonwealth of Kentucky is a recipient of such funds.

Several of the requirements of § 5633(a) are arguably implicated by this action:[1]

[A State's plan shall—]

(12)(A) provide within three years after the submission of the initial plan that juveniles who are charged with or who have committed offenses that would not be criminal if committed by an adult or offenses which do not constitute violations of valid court orders, or such nonoffenders as dependent or neglected children, shall not be placed in secure detention facilities or secure correctional facilities;

. . . .

(13) provide that juveniles alleged to be or found to be delinquent and youths within the purview of paragraph (12) shall not be detained or confined in any institution in which they have regular contact with adult persons incarcerated because they have been convicted of a crime or are awaiting trial on criminal charges;

(14) provide that, beginning after the 5–year period following December 8, 1980, no juvenile shall be detained or confined in any jail or lockup for adults, except that the Administrator shall, through 1993, promulgate regulations which make exceptions with regard to the detention of juveniles accused of non-status offenses who are awaiting an initial court appearance pursuant to an enforceable State law requiring such appearances within twenty-four hours after being taken into custody (excluding weekends and holidays) provided that such exceptions are limited to areas which—

(A) are outside a Standard Metropolitan Statistical Area,

(B) have no existing acceptable alternative placement available, and

(C) are in compliance with the provisions of paragraph (13); . . . .

Although the basis for appellant's claim has not been clearly articulated, review of the trial record reveals that it cannot have been legitimately based on either paragraph 12(A) or paragraph 13. That is, appellant was not a status offender; he had been found delinquent by virtue of his guilty plea. Further, the evidence conclusively shows that during his brief stay at the detention center, appellant was completely segregated from adult offenders and detainees. Appellant's claim can only reasonably be deemed to be based on paragraph 14. Evidence was presented at trial indicating Horn was to be temporarily lodged at the detention center even though an "acceptable alternative placement" may have been available.

The first question posed is whether the alleged violation of this plan requirement is a deprivation of a "right, privilege or immunity." This inquiry turns on whether the requirement was intended to benefit appellant Horn. *Wilder, supra,* 496 U.S. at 509, 110 S.Ct. at 2517. If so, the provision creates a right enforceable under § 1983 unless it reflects merely a congressional preference rather than a binding obligation, or unless it is so vague and amorphous as to be beyond the competence of the judiciary to enforce. *Id.*

The requirement that juveniles not be detained in adult facilities unless no acceptable alternative is available is unquestionably intended to benefit juveniles like appellant. Further, the paragraph 14 requirement is defined with sufficient detail to be judicially enforceable. Whether paragraph 14 creates a "binding obligation" is a closer question.

In *Wilder,* 496 U.S. at 510–12, 110 S.Ct. at 2517–19, and, more recently, in *Suter v. Artist M.,* —— U.S. ——, —— –——, 112 S.Ct. 1360, 1366–70, 118 L.Ed.2d 1 (1992), the Supreme Court recognized that conditions placed upon the disbursement of federal funds to a state may confer enforceable rights upon the intended beneficiaries of the funding assistance. However, the conditions must be unambiguous, specific and mandatory. In *Suter,* the statutory requirement that

1. While these provisions are not specifically named in the complaint, the appellate briefs imply they have been understood as forming the basis for Horn's claim under the Juvenile Justice Act. They are here quoted as they existed in May 1990.

the recipient state make "reasonable efforts" to prevent removal of neglected and abused children from their homes was held to create only a generalized duty, not enforceable in a private action under § 1983. In *Wilder*, by contrast, a statutory requirement that a state participating in the Medicaid program provide for payment to hospitals according to rates the state finds reasonable and adequate was deemed sufficiently definite and mandatory.

The provisions of the Juvenile Justice Act here at issue are more specific than those evaluated in either *Suter* or *Wilder*. Paragraphs 12(A), 13 and 14, read in conjunction, essentially require that states receiving federal funding (1) prohibit the detention of status offenders in secure facilities, (2) prohibit the detention of status offenders and juvenile delinquents in facilities where they would have regular contact with adult offenders, and (3) prohibit the detention of status offenders and juvenile delinquents in adult detention facilities, even for a period as short as 24 hours, unless no acceptable alternative placement is available. These requirements are definite and specific.

They are also mandatory. Section 5633(c) of the Act provides that a state's failure to comply with paragraphs (12)(A), (13) and/or (14) shall result in the termination of eligibility for funding or a substantial reduction in funding. This withholding of funding to states not in compliance is not precatory, but mandatory. It reflects not just a suggestion or "nudge," but congressional intent to impose a binding obligation. *Wilder*, 496 U.S. at 512, 110 S.Ct. at 2518–19.

■ We conclude, therefore, that the alleged violation of the Juvenile Justice Act constitutes the deprivation of a right, privilege or immunity. This deprivation is actionable under § 1983 unless Congress has expressly foreclosed such an enforcement action. We may not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right. *Id.*, at 520, 110 S.Ct. at 2523 (quoting *Wright v. Roanoke Redevelopment & Housing Authority*, 479 U.S. 418, 423–24, 107 S.Ct. 766, 770–71, 93 L.Ed.2d 781 (1987)). The burden is on appellees to show "by

express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement." *Id.*, at 520–21, 110 S.Ct. at 2523 (quoting *Wright, supra*, 479 U.S. at 423, 107 S.Ct. at 770).

Here, appellees have not carried their burden. They have not identified any provision foreclosing private enforcement. Nor have they argued that the Act creates a remedial scheme sufficiently comprehensive to imply congressional intent to preclude the § 1983 remedy. See *Wilder*, 496 U.S. at 521, 110 S.Ct. at 2523–24. In fact, the Act contains no provision for private judicial or administrative enforcement. That the Act gives the Administrator of the Office of Juvenile Justice and Delinquency Prevention the power to terminate or withhold funding does not manifest congressional intent to foreclose reliance on § 1983 to vindicate federal rights. See *Wilder*, 496 U.S. at 522, 110 S.Ct. at 2524; *Wright*, 479 U.S. at 428, 107 S.Ct. at 773.

Having thus determined that the Act creates a federally secured right and that Congress has not foreclosed private enforcement, we hold that appellant was and is entitled to seek relief through a private cause of action under 42 U.S.C. § 1983. Although we are aware of no circuit court decisions on this issue, our conclusion is consistent with the majority of district court decisions on point. See *James v. Jones*, 148 F.R.D. 196, 199–200 (W.D.Ky.1993); *Grenier v. Kennebeck County, Maine*, 748 F.Supp. 908, 914–18 (D.Me. 1990); *Doe v. Borough of Clifton Heights*, 719 F.Supp. 382, 384 (E.D.Pa.1989), *aff'd without opinion*, 902 F.2d 1559 (3rd Cir. 1990), *cert. denied* 498 U.S. 941, 111 S.Ct. 348, 112 L.Ed.2d 312 (1990); *Hendrickson v. Griggs*, 672 F.Supp. 1126, 1133–37 (N.D.Iowa 1987); *Kentucky Ass'n for Retarded Citizens v. Conn*, 510 F.Supp. 1233, 1246–50 (W.D.Ky. 1980) (recognizing the right *sub silentio*), *aff'd* 674 F.2d 582 (6th Cir.1982), *cert. denied*, 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982). Also, two recent unpublished decisions of district courts in the Sixth Circuit reached the same conclusion. *Doe v. Knauf*, slip op., no. 91–187, 1992 WL 672296

(E.D.Ky. Aug. 24, 1992); *James v. Wilkinson*, slip op., no. 89–139 (W.D.Ky. May 20, 1991).

Here, the district court reached a contrary result in a summary ruling based primarily on *Doe v. McFaul*, 599 F.Supp. 1421, 1430 (S.D.Ohio 1984). In *Doe v. McFaul*, the Juvenile Justice Act's purpose and history were found not to give rise to an implied right of action under the test of *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), or under § 1983. *Doe v. McFaul* was decided prior to the Supreme Court's instructive decisions in *Wright, Wilder* and *Suter.* While it may not necessarily have been erroneously decided then, the *Doe v. McFaul* ruling can no longer be viewed as reliable.

Accordingly, we conclude the district court erred when it summarily dismissed appellant's § 1983 claim based on the Juvenile Justice Act.

■ We also conclude, however, that the error was harmless. Even assuming appellant would have been able to establish the Juvenile Justice Act was violated, the trial proofs clearly fail to demonstrate that such violation was a proximate cause of his injury.

■ In *Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 550 (6th Cir.1992), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 187, 121 L.Ed.2d 131 (1992), this Court held that proximate causation is an essential element of a § 1983 claim for damages. See also *Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 305–308, 106 S.Ct. 2537, 2541–43, 91 L.Ed.2d 249 (1986). That is, a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury.

We assume appellant would have been able to establish his temporary lodging in the Madison County Detention Center was technically violative of the Juvenile Justice Act because an acceptable alternative placement was available. However, the record is devoid of proof tending to show that the center's nature, being a secure adult facility as opposed to a secure juvenile facility, contributed in any way to appellant's suicide attempt or resultant injury. In fact, the record unequivocally demonstrates appellant was scrupulously shielded from the deleterious influences associated with adult facilities.

The Madison County Detention Center was brand new, approved for use as an intermittent juvenile holding facility. Appellant was received in an area specially designated and labeled "juvenile intake." He was accompanied and reassured during the intake procedure by his court designated worker. The intake procedure was sufficient to enable the attending officers to observe that appellant did not appear to be ill, upset, agitated, depressed, or under the influence of alcohol or drugs. He was segregated from adult offenders and detainees by sight and sound. He was not placed in restraints of any kind. After being escorted to his cell, he was permitted to take a shower and watch television. He was thereafter monitored at intervals of approximately 15 minutes. When appellant was discovered hanging from his bunk, CPR was administered and he was resuscitated after the sheet was removed from his neck.

Appellant's claim that the technical violation of the Juvenile Justice Act caused his injury is not articulately asserted. The theory presumably is that if he had been placed in a secure juvenile facility, he would have been less likely to attempt suicide because (1) he might not have been as isolated, and (2) he would have been attended by officers better trained in the handling of juveniles. The theory is a matter of pure speculation, not supported by evidence of record. It amounts to nothing more than a hypothetical argument that his injury would not have occurred but for the violation of the Act. This argument, without more, is insufficient to sustain a compensable claim under § 1983. *Sullivan County, supra,* 956 F.2d at 550.

Viewing the evidence in the light most favorable to appellant, we find it clearly insufficient to raise an issue of material fact upon which reasonable minds could differ. Thus, even if appellant had been permitted to pursue this claim in trial, it would certainly have resulted in judgment for defendants as a matter of law under Fed.R.Civ.P. 50(a). See *id.*, at 549–50; *Lewis v. City of Irvine*, 899 F.2d 451, 454 (6th Cir.1990). It follows that the district court's dismissal of the claim was harmless error.

## III.

At the close of the proofs, the trial court granted defendants' motion under Fed. R.Civ.P. 50(a) for judgment as a matter of law on plaintiff's Eighth Amendment claim. In reviewing the propriety of this decision, we apply the same standard as the trial court. *Lewis v. City of Irvine, supra,* 899 F.2d at 454.

> The standard to be applied in determining the propriety of a grant or denial of a directed verdict is whether the evidence is such, without weighing the credibility of the witnesses or considering the weight of the evidence, that there is substantial evidence from which the jury could find in favor of the party against whom the motion is made. In considering a motion for directed verdict the district court and this court must view the evidence in a light most favorable to the party against whom it is made. Only when it is clear that reasonable people could come to but one conclusion from the evidence should a court grant a motion for directed verdict.

*Hill v. McIntyre,* 884 F.2d 271, 274 (6th Cir.1989).

■ Plaintiff alleged that defendants were deliberately indifferent to the special needs of juvenile detainees, in violation of the Eighth Amendment. Where prison officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 545, 99 S.Ct. 1861, 1877, 60 L.Ed.2d 447 (1979); *Roberts v. City of Troy,* 773 F.2d 720, 723 (6th Cir.1985).

■ A detainee's psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies. *Da-*

*nese v. Asman,* 875 F.2d 1239, 1243–44 (6th Cir.1989), *cert. denied* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 610 (1990); *Roberts, supra,* 773 F.2d at 724. See also *Bowen v. City of Manchester,* 966 F.2d 13, 16 (1st Cir.1992); *Simmons v. City of Philadelphia,* 947 F.2d 1042, 1068 (3rd Cir.1991); *Buffington v. Baltimore County, Maryland,* 913 F.2d 113, 119–20 (4th Cir.1990); *Partridge v. Two Unknown Police Officers,* 791 F.2d 1182, 1187 (5th Cir.1986); *Hall v. Ryan,* 957 F.2d 402, 406 (7th Cir.1992).

■ Officials may be shown to be deliberately indifferent to such serious needs without evidence of conscious intent to inflict pain. *Molton v. City of Cleveland,* 839 F.2d 240, 243 (6th Cir.1988). However, the conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish. *Id.; Roberts,* 773 F.2d at 724. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. *Danese, supra,* 875 F.2d at 1243–44. See also *Bowen v. City of Manchester, supra,* 966 F.2d 13, 17 (evidence must show the official had actual knowledge of, or was willfully blind to, the serious risk of suicide); *Colburn v. Upper Darby Tp.,* 946 F.2d 1017, 1024–25 (3rd Cir. 1991) (circumstances must be such that the official knew or should have known of the "particular vulnerability to suicide" or the "strong likelihood" that self-inflicted harm would occur).

■ Appellant concedes by his silence that none of the named defendants had actual or constructive knowledge of *his* suicidal propensity.[2] He argues, however, that as a juvenile, he is a member of a class of detainees who, because of their age, are more vulnerable to suicide than others and who are entitled to special care. He contends defendants should have ensured (1) that he was screened more carefully for suicidal tendencies during the intake procedure; (2) that jail

---

**2.** Court designated worker Haynes had been informed by appellant's parents that he had attempted suicide early in May 1990 by taking some pills, but avoided harm by self-inducing vomiting. There is also controverted evidence

that Mrs. Horn had told Haynes that appellant had on May 31st threatened to commit suicide if he were placed in jail. Neither circumstance was communicated to any of the defendants on trial.

personnel were better trained concerning the special needs of juveniles; and (3) that at least one staff member on each shift at the detention center had received CPR certification. Defendants' failure to take these precautions is said to constitute deliberate indifference.

Appellant cites no authority specifically supporting any of these theories. Neither does the trial record contain evidence that would conceivably warrant a verdict in his favor.

Appellant acknowledges that this Court has expressly declined to recognize the general right of a detainee to be screened correctly for suicidal tendencies. *Danese,* 875 F.2d at 1244. He argues nonetheless that such a right should be recognized for juvenile detainees in adult facilities. He asks the Court to recognize that juvenile detainees are particularly vulnerable to suicide and that defendants should have known this. Their failure to screen him more thoroughly is said to constitute deliberate indifference.

In *Simmons v. City of Philadelphia, supra,* the Third Circuit reversed a directed verdict, finding sufficient evidence had been presented to conceivably warrant a finding that intoxicated detainees are particularly vulnerable to suicide and that failure to take certain precautionary measures could be found to be deliberately indifferent. 947 F.2d at 1068–74. Comparison of the evidence presented in *Simmons* with the present trial record reveals marked differences. Although Joseph Rowan testified as an expert in both cases, the present record does not contain statistical evidence concerning suicide frequency among juvenile detainees of the sort presented in *Simmons.* Rowan testified that juveniles tend to be more impulsive than adults and tend to react more strongly to isolation. Such testimony hardly creates an inference that there was "a substantial likelihood, rather than a mere possibility," that appellant would try to harm himself. See *Schmelz v. Monroe County,* 954 F.2d 1540, 1545 (11th Cir.1992); *Colburn v. Upper Darby Tp., supra,* 946 F.2d at 1024. Rowan also testified that "unusual or severe agitation" is a significant indicator of suicidal propensity among youths, a condition which

appellant indisputably did not display in this case. In further contrast to *Simmons,* 947 F.2d at 1066, 1071, the present record does not contain evidence that defendants knew of the frequency of juvenile detainee suicides and deliberately chose not to employ reasonable preventive measures. Finally, there is absolutely no showing that use of a more extensive screening procedure would have prevented appellant's suicide attempt. Accordingly, based on the present record, we decline to recognize that juvenile detainees are, as a class, particularly vulnerable to suicide and entitled to special screening for suicidal tendencies.

Appellant's latter two theories also fail. While Jailer Devere and his deputies should ideally have been better trained in the treatment of juvenile detainees, the facts of this case demonstrate only that appellant was treated fairly and professionally and was monitored relatively closely. Any shortfall in their training can, at worst, be characterized as mere negligence, not deliberate indifference, and was not a proximate cause of appellant's injury. The failure to ensure that a member of each shift was CPR-certified was also an inconsequential technical defect. It appears Deputy Sparks had received CPR training, performed CPR promptly, and succeeded in resuscitating appellant.

The trial court did not err in awarding judgment as a matter of law to defendants on the claim that they were deliberately indifferent to plaintiff's serious medical needs.

### IV.

Appellant contends the district court erred by prohibiting all reference to the Juvenile Justice Act requirements during trial. The district court essentially ruled that the Act's requirements were not relevant after dismissal of the claim that was based on those requirements. Appellant insists the requirements were relevant to establish that Ron Devere was deliberately indifferent to his federally secured rights.

Having already concluded the district court should have allowed appellant to take his Juvenile Justice Act claim to trial,

we can hardly rule that exclusion of evidence of the Act's requirements was not erroneous. The real question posed is whether such error prejudiced a substantial right. *Kelly's Auto Parts, No. 1, Inc. v. Boughton,* 809 F.2d 1247, 1255 (6th Cir.1987). Unless appellant's substantial rights were adversely affected by the erroneous exclusion, the error will be deemed harmless. *Id.* In view of our foregoing discussion regarding the substantial deficiencies in appellant's deliberate indifference case, we are convinced that exclusion of the Juvenile Justice Act standards worked no substantial prejudice and was legally harmless.

### V.

Finally, appellant contends the trial court erred when it denied his motion for judgment as a matter of law. He argues it is unconstitutional per se to lodge a juvenile in an adult facility, citing *Cox v. Turley,* 506 F.2d 1347 (6th Cir.1974), and *D.B. v. Tewksberry,* 545 F.Supp. 896 (D.Oregon 1982). Neither case supports the asserted proposition. Both indicate that under some circumstances, the detention of a juvenile in an adult facility may be unconstitutional. As fully discussed above, such unconstitutional circumstances are not presented in this case. Denial of plaintiff's motion for judgment as a matter of law was proper.

### VI.

For the foregoing reasons, the orders of the district court are **AFFIRMED** in part and **REVERSED** in part. The order dismissing plaintiff's claim based on the Juvenile Justice Act is **REVERSED**. We hold the Act is enforceable through a private cause of action under 42 U.S.C. § 1983. However, because we find the district court's error was ultimately harmless, the final judgment is **AFFIRMED**.