NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0427n.06
Filed: July 17, 2008

No. 07-6080

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JODY CAIN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| JOE MICHAEL IRVIN, Individually and as Police | ) | DISTRICT OF KENTUCKY |
| Chief of the City of Russell Springs, Kentucky; COLT | ) | |
| WILSON; CITY OF RUSSELL SPRINGS, | ) | |
| KENTUCKY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

BEFORE: MARTIN, GRIFFIN, and GIBSON, Circuit Judges.[*]

GRIFFIN, Circuit Judge.

Plaintiff Jody Cain appeals the district court's grant of summary judgment in favor of

defendants on her § 1983 claims of excessive force, false arrest, failure to provide medical care, and

municipal liability for failure to train, as well as her state law claims of assault, battery, negligence,

and outrage. She similarly appeals the district court's order denying her request to consider alleged

newly discovered evidence. For the reasons set forth below, we affirm.

I.

_____

[*]The Honorable John R. Gibson, Senior Circuit Judge, United States Court of Appeals for
the Eighth Circuit, sitting by designation.

On the evening of June 17, 2005, plaintiff's then-boyfriend, Colt Wilson, went to the Key Village shopping center, a popular gathering place for young people in Russell Springs, Kentucky. Jody Cain joined Wilson at Key Village later that evening. Some witnesses at Key Village noticed that plaintiff, upon her arrival, was "staggering," could not "walk very good," and "had to sit down." At approximately 8:00 or 8:30 p.m., Tammy Harris, Wilson's ex-girlfriend, arrived at Key Village. Harris engaged Wilson in conversation, which led to a verbal confrontation between Harris and plaintiff. Cain states that she walked away from Harris and, as she did so, Wilson produced a "fist pack" (a variant of brass knuckles) and struck her around the left eye. Defendants argue that witnesses do not recall seeing Wilson using such a object. Defendants additionally maintain that Cain, prior to being struck, screamed at Wilson and twice slapped him in the face. After the altercation, Wilson immediately left the scene.

Plaintiff was helped to her feet by her friend Nathan Hardin, and he escorted her to the car of another friend, Jacob Sigward. Hardin testified that he suggested that plaintiff be driven to the hospital, but that Cain was instead preoccupied with finding somebody to "beat up" Wilson. Hardin stated that plaintiff instructed Sigward to drive to the home of John Coleman, Cain's ex-boyfriend. Unable to locate Coleman, Cain then asked to be taken to the local Pizza Hut. Hardin testified that plaintiff wanted to find another ex-boyfriend, David McGowan, who worked at the Pizza Hut, so that he could "go after" Colt Wilson. Plaintiff, conversely, maintains that she wished to locate McGowan so that he could drive her to the hospital.

The police were initially dispatched to Key Village to investigate the altercation. Officer Jeremy West was first on the scene, arriving at 9:40 p.m. Police Chief Joseph Irvin arrived shortly thereafter. After discussing the altercation with people at Key Village, Irvin sent West to the hospital to locate Cain. West arrived at the hospital shortly before 10 p.m. and learned that Cain had not arrived. He informed Irvin of the same.

Irvin and Officer Jennifer Taylor eventually made contact with plaintiff at 10:15 p.m. in the parking lot of the Pizza Hut. Witnesses and the officers state, and plaintiff concedes, that during this conversation her speech was slurred and that she had trouble maintaining her balance. Plaintiff states that Irvin mocked her demeanor during this conversation. Plaintiff also told Irvin that she had taken her prescription pills earlier that evening, which included Lortab and Xanax. Believing that Cain was intoxicated, Irvin shined a flashlight into plaintiff's eyes and observed that her pupils were non-reactive, a symptom consistent with being under the influence of a controlled substance. At one point during the conversation, plaintiff lost her balance and began to stumble. Irvin managed to grab plaintiff by her shirt to prevent her from falling. Although Cain argues that Irvin's maneuver was aggressive, she admits that Irwin did not in any way strike or touch her, beyond preventing her from falling down. Plaintiff claims she asked Irvin to transport her to the Adair County Hospital, but was rebuffed. Irvin, conversely, claims that he asked plaintiff if she needed to go to the hospital, but that she refused. Several eye witnesses corroborate Irvin's version of events.

At this time, Irvin noticed a cellophane bag hanging out of plaintiff's pocket. The officers questioned plaintiff about the bag, and she turned it over to the police. The officers noticed that the

bag contained prescription pills outside of their original prescription container. Plaintiff was ultimately arrested and charged with public intoxication; possession of a controlled substance, schedule III (Lortab) and schedule IV (Xanax); and possession of a controlled substance outside of its original container.

Officer Taylor initially transported plaintiff to the Russell County Jail, but because the facility does not house woman inmates, Cain was taken to Adair County Jail. Jailer Sheila Wilson Bennett testified that while she was receiving plaintiff into custody, Cain appeared intoxicated, but did not appear to need medical attention. On the medical intake form, plaintiff listed her back as her only medical problem, an injury she sustained years before. Cain was permitted to use the telephone before being transported to Adair County Jail.

The district court found that during plaintiff's transfer to the Adair County Jail, Deputy Bennett noticed that plaintiff's left eye had begun to swell.[1] The Adair County Jail refused to admit plaintiff based on this swelling. Bennett then transported plaintiff to the Westlake Regional Hospital in Columbia, Kentucky. After initial examination at Westlake, plaintiff was transferred to the

---

[1] Although the district court stated that the swelling became noticeable after plaintiff was already in custody, the Uniform Citation form, completed by Officer Taylor, seems to indicate that plaintiff's left eye was swollen when the police initially made contact with Cain. It reads, in relevant part: "Miss Cain was present and had been into a fight with Colt Wilson earlier. Upon speaking with Miss Cain she was slurring her speech and unsteady. Her left eye was swollen shut and her right eye was bloodshot, glassy, was pinpoint nonreactive to light." As we read the citation, Officer Taylor made all of these observations during her initial contact with plaintiff. As the pinpoint eye test was administered in the Pizza Hut parking lot, we must assume that plaintiff's left eye was swollen when Chief Irvin made the decision to arrest Cain and allegedly deny her request for medical care.

University of Louisville Hospital for additional treatment. Testing revealed that plaintiff had not suffered brain injury, nor was there any bone fractures in her face, jaw, or chest, although she had soft tissue swelling on her head. Tests further found positive traces of prescription medicine in her system. Plaintiff was prescribed eye drops and discharged to the care of her father.

Plaintiff subsequently brought state and federal claims against Irvin in both his official and individual capacities and against the City of Russell Springs. Plaintiff's Complaint alleged violations of her Fourth and Fourteenth Amendment rights by Irvin and the City, and state law claims against Irvin for intentional infliction of emotional distress (outrage), assault, battery, and negligence. Plaintiff sought punitive damages for these alleged injuries under both state and federal law.

II.

We review a district court's decision granting summary judgment de novo. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco, Inc.*, 477 F.3d 854, 861 (6th Cir. 2007) (citing *Kessler v. Visteon Corp.*, 448 F.3d 326, 329 (6th Cir. 2006)). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (citing FED. R. CIV. P. 56(c)). The evidence must be viewed in the light most favorable to the nonmoving party, giving that party the benefit of all reasonable inferences. *Id*. (citing *Kessler*, 448 F.3d at 329). "However, 'the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), it must present significant probative

evidence in support of its complaint to defeat the motion for summary judgment.'" *Id*. (quoting *Expert Masonry, Inc. v. Boone County, Ky.*, 440 F.3d 336, 341 (6th Cir. 2006)). "'A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.'" *Id*. (quoting *Kessler*, 448 F.3d at 329). "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment appropriate." *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

The first issue ruled upon by the district court is whether Chief Irvin utilized excessive force against Cain. However, plaintiff failed to present any argument regarding this issue on appeal. Indeed, it appears that plaintiff has abandoned this claim, because she explicitly states in her appellate brief that her constitutional violations arose from false arrest and denial of medical care, and makes no argument regarding her excessive force claim. Furthermore, plaintiff concedes by her testimony that she does not claim that Chief Irvin used improper force against her. We therefore deem this issue abandoned or waived. *See Tiseo Architects, Inc. v. B & B Pool Service and Supply Co.*, 495 F.3d 344, 348 (6th Cir. 2007); *see also Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (noting "[b]ecause [appellant] wholly fails to address the issue in her appellate brief, we conclude that she has waived her right to appeal the district court's [ruling].").

### III.

On appeal, plaintiff first argues that she was arrested without probable cause, resulting in a violation of her Fourth Amendment rights. This claim has no merit. As we have held, "[p]olice may

arrest a person without a warrant if they have probable cause at the time of the arrest to believe that the person has committed or is committing a crime." *United States v. Caicedo*, 85 F.3d 1184, 1192 (6th Cir. 1996) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Indeed, "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001).

Further, probable cause is to be determined on the basis of the evidence available to the arresting officer at the time of the arrest. *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001). This record reveals ample support for the officers' probable cause determination. Examining the disputed facts in the light most favorable to plaintiff, it is evident that Cain exhibited behavior that would provide sufficient grounds to arrest for violation of KY. REV. STAT. § 525.100, which prohibits appearing in a public place under the influence of a controlled substance. Both Irvin and Deputy Bennett believed plaintiff to be inebriated on the basis of her inability to stand and her slurred speech. Plaintiff intimates that this behavior was the result of head trauma caused by the punch she received in the eye. Although this explanation would not account for why witnesses observed plaintiff unable to stand and walking in a "zig-zag" fashion upon her arrival at Key Village, at the summary judgment stage, we must accept plaintiff's explanation as true.

However, even assuming this was the cause of plaintiff's apparent disorientation, our inquiry is not to determine the veracity of the charge, i.e., was Cain *actually* intoxicated, but rather whether Irvin had probable cause *to believe* that Cain was intoxicated. Irvin's impression that plaintiff was

inebriated is supported not only by the observations of a fellow officer, but also by witnesses who observed Cain *before* she was struck. Based on plaintiff's admitted use that evening of Lortab and Xanax, her difficulty standing, slurred speech, and non-reactive pupil dilation, it was reasonable for Irvin to arrest plaintiff for violation of KY. REV. STAT. § 525.100.

Moreover, assuming arguendo that Chief Irvin lacked probable cause to arrest plaintiff for a violation of § 525.100, Irvin still had probable cause to arrest her for violation of KY. REV. STAT. § 218A.210, possession of controlled substances outside of their prescription container, as well as for possession of Schedule III and Schedule IV controlled substances, in violation of KY. REV. STAT. §§ 218A.1416 and 218A.1417. There is no dispute that plaintiff had these pills on her person, voluntarily handed them over to police, and was unable to produce a prescription. Thus, Chief Irvin had an alternative basis to arrest plaintiff. In this regard, we have stated, "even where there is no probable cause to arrest the plaintiff for the crime charged, proof of probable cause to arrest the plaintiff for a related offense is also a defense which may entitle the arresting officer to qualified immunity." *Avery v. King*, 110 F.3d 12, 14 (6th Cir. 1997).

IV.

Next, plaintiff asserts that Chief Irvin violated her constitutional rights by unreasonably denying her needed medical attention. Because we must view all contested facts in the light most favorable to plaintiff, we assume that plaintiff requested, and was denied, medical care.

"Where prison [or jail] officials are so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment

in violation of the Eighth Amendment." *Horn v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Pretrial detainees are analogously protected from such mistreatment under the Due Process Clause of the Fourteenth Amendment." *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 545 (1979); *Roberts v. City of Troy*, 773 F.2d 720, 723 (6th Cir.1985)). The Supreme Court has established a two-part test, with both a subjective and objective prong, to determine whether a prisoner's right to adequate medical care has been violated. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

First, the deprivation alleged must be "'sufficiently serious' [in that] a[n] . . . official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 422 U.S. 337, 347 (1981)). The second subjective prong requires plaintiff to show that the police or jailers had a "sufficiently culpable state of mind." *Wilson*, 501 U.S. at 297; *Napier*, 238 F.3d at 742. "To sustain such a claim, it is not necessary that the . . . officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to [a prisoner's] serious medical needs." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988). Specifically, to satisfy the subjective prong, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001) (citing *Farmer*, 511 U.S. at 837). Because plaintiff received

medical care, the question before us is whether the two-hour delay Cain experienced before receiving that care amounted to a violation of her due process rights.

We agree with the district court that plaintiff has satisfied the subjective prong of the *Farmer* test. Viewing the facts in the light most favorable to plaintiff, Cain states that she indicated to Chief Irvin that she was in great pain and that she wished to go to the hospital. She alleges that Chief Irvin not only refused this request but mocked and insulted her. Assuming these facts to be true, Cain has raised a jury question regarding whether Chief Irvin exhibited a deliberate indifference to plaintiff's medical needs.

However, we hold that plaintiff is unable to satisfy the concomitant objective prong. Defendants argue that this court, in *Napier*, adopted the reasoning of several circuits in holding that when a plaintiff complains of an unreasonable delay in receiving medical care, she must present medical evidence to establish the detrimental effect of the delay. It is indeed true that we previously adopted the approach taken by the First, Third, and Eleventh Circuits in requiring "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Napier*, 238 F.3d at 742 (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). This method, we concluded, ensures an accurate appraisal of whether the "alleged deprivation is 'sufficiently serious.'" *Id*. (quoting *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000)).

The scope of this rule has been subsequently clarified as only one method in which a plaintiff may satisfy the objective prong and should not be treated as dispositive. *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 897-98 (6th Cir. 2004). As stated in *Blackmore*, *Napier* controls in cases where the injury is not apparent or appears to be relatively minor. As we elaborated:

> In sum, the "verifying medical evidence" requirement is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care . . . . In a word, *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers. *Napier* applies where the plaintiff's "deliberate indifference" claim is based on the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious. In such circumstances, medical proof is necessary to assess whether the delay caused a serious medical injury.

*Id*. at 898 (citing *Napier*, 238 F.3d at 742).

Our clarification of *Napier* in *Blackmore* dictates a two-part inquiry when dealing with the "objectively serious" prong of the *Farmer* test. A reviewing court should first determine whether the injury is "obvious," i.e. "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id*. at 897 (quoting *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990) (emphasis added). If there is an obvious need for medical treatment, then the court must determine whether the delay in securing that care was reasonable. *Id*. at 899-900. If, however, the injury is not apparent or relatively minor, *Napier* governs, and a plaintiff must provide "medical evidence" demonstrating that the delay in treatment resulted in additional injury.

Applying this standard to the instant case, we conclude plaintiff's injury was not one that obviously necessitated a doctor's care. Although we construe the facts in a manner that assumes plaintiff's injury was apparent to the police when they initially made contact with her, this alone does not satisfy the "obviousness" test. Indeed, this test does not address whether the injury is merely observable to bystanders; if that were the case, even untreated bloody noses or visible scrapes would satisfy the objective prong of the *Farmer* test. Instead, the obviousness test is whether a layperson would perceive the need for immediate medical assistance. Unlike *Blackmore*, where the inmate struggled with intense abdominal pains and vomiting for two days prior to receiving medical attention for a life-threatening case of appendicitis, here Cain waited only two hours before receiving medical care for her swollen eye. Similarly, in *Garreston v. City of Madison Heights*, 407 F.3d 789 (6th Cir. 2005), a case relied upon by plaintiff, the arrested individual informed police during her booking that she was an insulin-dependent diabetic. *Id*. at 794. After the police failed to provide insulin for a full day, she required emergency treatment for diabetic ketoacidosis. *Id*. at 194-95. The facts of these cases widely diverge from those of the instant matter, because the prisoners' need for medical care in these cases was obvious and the delay in treatment presented a serious, if not fatal, risk to the prisoners' health. Given the relatively minor nature of Cain's injury, we hold that plaintiff cannot satisfy the objective prong of the *Farmer* test.

V.

Plaintiff also brings a claim for municipal liability against the City of Russell Springs pursuant to 42 U.S.C. § 1983 for alleged deprivation of her constitutional rights under the Fourth and

Fourteenth Amendments. This claim includes Cain's claim against Chief Irvin in his official capacity, as a "suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

For an injurious practice or policy claim to succeed, plaintiff must establish a causal link between her constitutional injury and the alleged wrongful policy. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). Plaintiff alleges only two constitutional violations, one stemming from an alleged arrest without probable cause, and one from an alleged denial of needed medical care. As we noted above, neither of these claims has legal or factual support, and, therefore, there is no constitutional violation in the instant case. Without a constitutional violation, plaintiff's concomitant municipal liability claim fails as a matter of law. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (noting "[i]f a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point") (emphasis omitted). Therefore, the district court properly granted summary judgment regarding this claim, and we do not reach defendants' alternative argument of qualified immunity.

VI.

In the district court, plaintiff raised state law claims against Irvin, alleging assault, battery, negligence, and outrage (intentional infliction of emotional distress). Again, plaintiff has failed to argue that the district court's grant of summary judgment in favor of defendants on these claims was

improper. Because plaintiff fails to argue these claims on appeal, these issues are abandoned or waived. *See Tiseo Architects*, 495 F.3d at 348; *Dillery*, 398 F.3d at 569.

## VII.

Finally, plaintiff's argument regarding the district court's refusal to consider alleged newly discovered evidence is similarly without merit. *See* FED. R. CIV. P. 59(e). The evidence that plaintiff requested the district court to address was not newly discovered, because it was available to plaintiff before the decision on defendants' motion for summary judgment. *See GenCorp, Inc. v. American Underwriters*, 178 F.3d 804, 834 (6th Cir.1999).

## VIII.

For these reasons, we affirm the judgment of the district court.