**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0519n.06

No. 09-6334

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

**Aug 17, 2010**

LEONARD GREEN, Clerk

ANGELA HARRELL,

      Plaintiff-Appellant,

v.

GRAINGER COUNTY, TENNESSEE; MARILYN
MESSER; LIZ WINSTEAD; ADAM MORGAN;
ROBBIE RICH; T. J. HOLT; TRENEDY BROOKS,

      Defendants-Appellees

and

TRINITY, Deputy; TASHA SINGLETON; JAMES
HARVILLE, Sheriff; ANDY DOSSETT, Chief;
TROY BARNARD; DANNY LAMB,

      Defendants.

                            /

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

Before: COLE and CLAY, Circuit Judges; and KATZ, District Judge.[*]

    **CLAY, Circuit Judge.** Plaintiff, Angela Harrell, appeals from the district court's order granting summary judgment in favor of Defendants. Plaintiff brought this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to her serious medical needs while she was incarcerated at Grainger County Jail. For the reasons set forth below, we **AFFIRM** the district court's order.

---

[*] The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

**BACKGROUND**

On October 6, 2006, Plaintiff was booked into the Grainger County Jail ("Grainger"). Plaintiff alleges that she told Officer Elizabeth Winstead Shaw at booking that she had a serious back problem. Upon booking, Officer Candee Bond interviewed Plaintiff and filled out a medical questionnaire. Plaintiff indicated that she was on the following medications: Lortab, Soma, Valium, and birth control. In addition, Plaintiff responded in the affirmative to the question: "Has inmate fainted recently or had a recent head injury?" (Dist. Ct. R.E. 75 at 8). Finally, Plaintiff reported "back pain" in response to the question: "Does inmate have any other medical problem we should know about?" (*Id.*)

Plaintiff claims that, prior to being arrested, she had a serious back injury as a result of a car accident in 2001 and was prescribed narcotic medications to alleviate her back pain. She describes her back problems as "lower lumbar disk, pulled muscles in the lower part of her back, lower vertebra missing, and curved spine." (Dist. Ct. R.E. 80 Aff. 1 ¶ 13). In support of her claim that she had a preexisting back injury, Plaintiff's only evidence is an unsigned letter from Dr. Hal Moncier stating: "[Plaintiff] was unable to work in 2006, due to medical problems, which include lumbar radiculopaty and lumbar disc disease with back pain." (Dist. Ct. R.E. 80 Aff 1 Ex. 3).

Plaintiff makes the following allegations concerning the aggravation of her back injury at Grainger: She told Officer Winstead Shaw that she could not lift and carry a mattress to her cell, but she was forced to carry the mattress anyway. As Plaintiff carried the mattress up the stairs toward her cell, something "popped" in her back. (Dist. Ct. R.E. 80-1 Aff. 1 ¶ 2). After Plaintiff arrived at her cell with her mattress, she told Officer Winstead Shaw that she was in pain and having problems with her back. Officer Winstead Shaw locked the cell door and left. Plaintiff pressed a

2

call button for help. After some time, Officer Winstead Shaw and Deputy Adam Morgan came to her cell. Deputy Morgan accused her of faking her condition. However, Plaintiff had a knot in her back that was not there before carrying the mattress. She remained on the floor for approximately 20 minutes before Sheriff Harville was summoned and an ambulance was dispatched. During this time, she was in pain, was unable to get up, and was told not to move by Officer Winstead Shaw and Deputy Morgan.

Plaintiff was then transported by ambulance to the Jefferson County Memorial Hospital, where x-rays were taken of her lumbar spine, thoracic spine, and pelvis. The results of these x-rays were normal and showed no fractures. The emergency room records indicate that Plaintiff was instructed that she could have "Tylenol and/or Ibuprofen for pain." (Dist. Ct. R.E. 80-1 Aff. 1 at 15). Plaintiff claims that the doctor told Shane Atkins and Trenedy Brooks that Plaintiff needed narcotic medication and had been taking Lorab and Methcarbonal 50. According to Plaintiff, Brooks told the doctor that Plaintiff could not have narcotics, and the doctor wrote his orders according to that instruction.

At all pertinent times, Dr. Mark Holland was the jail physician and Fonda Kitts was the jail nurse, and they were responsible for the medical care of inmates at Grainger. Dr. Holland testified that there are three medication runs for the inmates each day. Either he or Nurse Kitts performs the morning and afternoon medication runs every Monday through Friday, unless they both have a conflict. When either Dr. Holland or Nurse Kitts are performing a medication run, they visit each cell block and personally dispense medication. According to Dr. Holland, if Plaintiff was in need of medical care, she could have asked to see them.

3

After returning from the hospital, Plaintiff was again booked in the jail at 2:14 a.m. on October 7, 2006. The jail logs show that Plaintiff was given Ibuprofen at 2:55 a.m. on October 7, 2006, approximately 40 minutes after she was booked. The jail logs further indicate that at 7:48 a.m. on October 9, 2006, Dr. Holland handed out medication to female inmates and Plaintiff signed a non-prescription medication log acknowledging that she received 400 milligrams of Ibuprofen. According to the jail logs, Dr. Holland and Nurse Kitts performed each of the scheduled medication runs while Plaintiff was at Grainger. The doctor and nurse have no records and no recollection of Plaintiff requesting medical care aside from the two times she received Ibuprofen.

Plaintiff claims that she has never met Dr. Holland or Nurse Kitts. According to Plaintiff, at no time between October 6, 2006 and October 12, 2006 did either the doctor or the nurse come by her cell, ask her about medication, or offer her medication. Plaintiff further claims that on a number of occasions, she made requests for medication to Deputy Morgan and Rich, but each of them told her that they were out of medication because they used it up in the men's cells. After not receiving medication and continuing to be in pain, Plaintiff asked Rich if she could speak with Sheriff Harville, but she was never allowed to see him.

On October 5, 2007, Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants caused an aggravation of Plaintiff's injury, were deliberately indifferent to Plaintiff's serious medical needs, subjected her to cruel and unusual punishment, and denied her due process while she was incarcerated at the Grainger County Jail. On January 8, 2009, Defendants filed motions for summary judgment. On September 29, 2009, the district court granted Defendants' motions on the basis that Plaintiff failed to show that she had a serious medical need or that

4

Defendants acted with deliberate indifference. On October 21, 2009, the district court dismissed all further claims in this case. On October 29, 2009, Plaintiff filed a timely notice of appeal.

## DISCUSSION

### I. Standard of Review

This Court reviews a district court's grant of summary judgment *de novo*. *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 792 (6th Cir. 2009). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). This Court must view the evidence in the light most favorable to Plaintiffs to determine whether a genuine issue of material fact exists. *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *In re Calumet Farm, Inc.*, 398 F.3d 555, 558-59 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

### II. Analysis

"The Eighth Amendment forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward the inmate's serious medical needs." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The Due Process Clause of the Fourteenth Amendment extends the protection of the Eighth Amendment to pretrial detainees such as Plaintiff. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("It is clear . . . that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment."); *Barber v. City of*

5

*Salem, Ohio*, 953 F.2d 232, 235 (6th Cir. 1992) ("While a pretrial detainee does not enjoy protection of the Eighth Amendment, the Eighth Amendment rights of prisoners are analogous to pretrial detainees' due process rights under the Fourteenth Amendment."). *See also Bell v. Wolfish*, 441 U.S. 520, 545 (1979). A prison official may violate an inmate's constitutional rights by intentionally denying or delaying an inmate's access to medical care for a serious need. *Blackmore*, 390 F.3d at 895 (citing *Estelle*, 429 U.S. at 104).

"A constitutional claim for denial of medical care has objective and subjective components." *Id.* To fulfill the objective component, the prisoner must show that she is suffering from a "sufficiently serious" medical need, such that "[s]he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Not 'every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim.'" *Sarah v. Thompson*, 109 F. App'x 770, 771 (6th Cir. 2004) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997)). "In evaluating whether a medical need is sufficiently serious, the Ninth Circuit has considered the following factors: 'The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'" *Id.* (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997)).

To fulfill the subjective component, the prisoner must show that a prison official possessed a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (internal citation omitted). "A defendant possess[es] a sufficiently culpable state of mind when he acts with deliberate

6

indifference." *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005). "[D]eliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Farmer*, 511 U.S. at 836. Negligence, even gross negligence, on the part of prison officials will not support a § 1983 claim for denial of medical care. *See id.* at 837; *see also Horn by Parks v. Madison County Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994) ("[T]he conduct for which liability attaches must be more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish.").

With regard to the objective component, Plaintiff argues that the district court erred by relying on *Napier v. Madison County, Ky.*, 238 F.3d 739 (6th Cir. 2001) to find that she was required to place verifying medical evidence in the record to establish the detrimental effect of the delay in her medical treatment. Rather, Plaintiff argues that the court should have relied on *Blackmore v. Kalamazoo County*, in which this Court clarified that:

> the "verifying medical evidence" requirement [of *Napier*] is relevant to those claims involving minor maladies or non-obvious complaints of a serious need for medical care . . . *Napier* does not apply to medical care claims where facts show an obvious need for medical care that laymen would readily discern as requiring prompt medical attention by competent health care providers.

390 F.3d at 898. According to Plaintiff, her claims arise from an injury "so obvious that even a layperson would easily recognize the necessity for a doctor's attention" such that Plaintiff need not present verifying medical evidence to show the detrimental effect of the delay in treatment. *Id.* at 899 (internal citation omitted). In *Blackmore*, the plaintiff was suffering from sharp pains in his lower abdomen and vomiting–obvious symptoms of appendicitis–for two days before a jail nurse examined him and diagnosed him with appendicitis. *Id.* at 894.

By contrast, in the instant case, Plaintiff waited only a short time after complaining that she exacerbated her back injury carrying her mattress to her cell before the prison officials called an ambulance and Plaintiff was taken to a hospital to receive treatment for her back pain. *See Cain v. Irvin*, 286 F. App'x 920, 927 (6th Cir. 2008) (concluding that the "plaintiff's injury was not one that obviously necessitated a doctor's care" because "[u]nlike *Blackmore*, where the inmate struggled with intense abdominal pains and vomiting for two days prior to receiving medical attention for a life-threatening case of appendicitis . . . [the plaintiff] waited only two hours before receiving medical care for her swollen eye"). *Cf. Garretson County v. City of Madison Heights*, 407 F.3d 789, 794-97 (6th Cir. 2005) (finding that a diabetic whose condition required insulin injections at regulated intervals satisfied the objective requirement of a sufficiently serious medical need even without specific medical records). Thus, even if there was any delay before prison officials called an ambulance, the back symptoms that Plaintiff suffered during that short time were not so obvious that a layman would have determined that Plaintiff required faster medical attention than she received. Accordingly, Plaintiff's claim of delay in access to medical care falls within the framework of *Napier* and fails because Plaintiff did not place verifying medical evidence in the record to establish the detrimental effect of the delay in her medical treatment.

Furthermore, to the extent that Plaintiff claims that Defendants caused an exacerbation to an obvious injury by refusing to give her ibuprofen to treat her back pain, the jail logs in the record refute her claim that she was denied ibuprofen each time she asked. Rather, the logs show that Plaintiff received ibuprofen on at least two occasions in the six days she spent at Grainger. Although dispensing ibuprofen to Plaintiff two times in six days may have been deficient to adequately alleviate Plaintiff's pain, the prison officials' alleged failure to dispense medication to Plaintiff on

8

other occasions when she asked for it does not rise to the level of exacerbating an objectively obvious injury. *See Sarah*, 109 F. App'x at 771-72 (holding that an inmate failed to satisfy the objective component of his Eighth Amendment claim where the prison nurse refused his requests for ibuprofen for twelve days to treat intermittent pain in his hand).

Thus, Plaintiff has failed to satisfy the objective component of her Fourteenth Amendment claim against Defendants, because she has not shown that she suffered from a "sufficiently serious" medical need, such that "[s]he [wa]s incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Because Plaintiff has failed to satisfy the objective requirement to make out a constitutional claim for the denial of medical care, we need not reach the subjective component.

## CONCLUSION

Plaintiff has failed to show that she suffered from an objectively serious medical need while staying at Grainger. Thus, we **AFFIRM** the district court's order granting summary judgment to Defendants.